

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

June 9, 2015

The Honorable Kevin P. Eltife
Chair, Committee on Business and Commerce
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. KP-0024

Re: Construction of section 1304.1581 of the Occupations Code, governing cancellations and refunds of service contracts

(RQ-0001-KP)

Dear Senator Eltife:

You ask about the cancellation and refund of a service contract.[1] Chapter 1304 of the Occupations Code governs the administration of service contracts, through which a service provider and a consumer enter into an agreement for the repair, replacement, or maintenance of a product, or for payment to repair, replace, or maintain a product for a specified period of time. *See generally* TEX. OCC. CODE ANN. §§ 1304.001–.205 (West 2012 & Supp. 2014) (Service Contract Regulatory Act). Section 1304.1581 governs the cancellation of such an agreement by the consumer and the refund to which he or she is entitled. *Id.* § 1304.1581 (West 2012). Subsection 1304.1581(b)(1), applicable to cancellations within thirty days of purchase, states that a provider "shall refund to the service contract holder or credit to the account of the service contract holder the full purchase price of the contract, decreased by the amount of any claims paid under the contract." *Id.* § 1304.1581(b)(1). Likewise, subsection 1304.1581(c)(1), applicable to cancellations made thirty-one or more days after purchase, states that a provider "shall refund to the service contract holder or credit to the account of the service contract holder the prorated purchase price of the contract . . . decreased by the amount of any claims paid under the contract." *Id.* § 1304.1581(c)(1).[2] Finally, subsection 1304.1581(d) states that "[a] provider may allow a service

---

[1]*See* Letter from Honorable Kevin P. Eltife, Chair, Senate Comm. on Bus. & Commerce, to Honorable Greg Abbott, Tex. Att'y Gen. at 1 (Dec. 30, 2014), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

[2]Section 1304.159 governs the refund process when the cancellation is made by the service provider, stating similarly in subsection (c) that a consumer "whose contract is canceled by the provider . . . is entitled to a prorated refund of the purchase price . . . decreased by the amount of any claims paid under the contract." TEX. OCC. CODE ANN. § 1304.159(c) (West 2012).

contract holder to cancel a service contract on other terms included in the contract, provided the terms do not conflict with this section." *Id.* § 1304.1581(d). You tell us that a vehicle service contract provider amended its form agreement to specify that the amount of any previously paid claims would be deducted from funds returned to the consumer upon cancellation, in conformity with section 1304.1581, but was asked to remove such terms by a dealership through which the service contract would be sold.[3] Request Letter at 1. You ask us "to clarify whether a service contract provider has the discretion to not deduct the amount of any paid claims before issuing a refund" or whether a provider must "reduce a refund by the amount of claims paid."[4] *Id.* at 2.

In construing a statute, a court's "primary objective is to ascertain the Legislature's intent," which a court does, "if possible, through the words the Legislature selected." *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 51 (Tex. 2014). In addition, a court "derive[s] the Legislature's intent from the statute as a whole, not by reading individual provisions in isolation." *Id.* Section 1304.1581 expressly provides that a service provider "shall refund" either the full purchase price or a prorated purchase price—depending on the time of cancellation—"decreased by the amount of any claims paid under the contract." TEX. OCC. CODE ANN. § 1304.1581(b)–(c) (West 2012). The word "shall" is generally recognized as a mandatory provision "creating a duty or obligation." *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001); *see also* TEX. GOV'T CODE ANN. § 311.016(2) (West 2013) (providing that "shall" establishes "a duty").

The Texas Department of Licensing and Regulation (the "Department"), which is authorized to administer and enforce chapter 1304, takes the position that the word "shall" in subsections 1304.1581(b) and (c) "is tied to the refund, whether full or prorated, and is not tied to the deduction of claims paid."[5] The Department reasons that, because subsection 1304.1581(d) specifically allows for cancellation pursuant to other contract terms, another contract provision allowing for a refund with no deduction for claims already paid "would not . . . be in conflict with Section 1304.1581." Dep't Brief at 6. Instead, the Department maintains that section 1304.1581, when "read as a whole . . . establish[es] a 'floor' or a minimum set of consumer protections for service contract holders." *Id.* at 1.

---

[3]Briefing received from a third-party administrator of vehicle service contracts states that the administrator was "notified by two of its dealership customers" that the dealership's captive lender would no longer "approve the vehicle service contract because it included language that decreased the customer's refund proceeds by the amount of" previously paid claims. Brief from Mr. Christopher Wall, Gen. Counsel, Apex Prot., Inc. at 1 (Jan. 16, 2015) (on file with Op. Comm.). "[A]s a result the vehicle service contracts could no longer be financed on the captive lender's retail installment contracts." *Id.*

[4]Although your question concerns the underlying authority of the service provider and not the terms of the service contract, we note that a service contract "must . . . state the terms and restrictions governing cancellation of the contract by the provider or the service contract holder before the expiration date of the contract." TEX. OCC. CODE ANN. § 1304.156(a)(4) (West 2012). In addition, "[a] provider . . . may not, in the provider's service contracts . . . deliberately omit a material statement if the omission would be considered misleading." *Id.* § 1304.161(a)(2).

[5]Brief from Mr. William H. Kuntz, Jr., Exec. Dir., Tex. Dep't of Licensing & Regulation at 5 (Jan. 27, 2015) (on file with Op. Comm.) ("Dep't Brief"); *see also* TEX. OCC. CODE ANN. §§ 1304.051, 1304.201–.202 (West 2012) (authorizing the executive director of the Department to determine compliance with chapter 1304, impose disciplinary action, and seek injunctive relief and civil penalties).

A court construing statutory language will assume that the Legislature has chosen the language "deliberately and purposefully." *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014). Like a court, "[w]e must not interpret the statute 'in a manner that renders any part of the statute meaningless or superfluous.'" *Id.* (citing *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008)). The Department's construction of subsections 1304.1581(b) and (c) disregards the express language of the clause "decreased by the amount of any claims paid under the contract," which can only modify the words "full purchase price." TEX. OCC. CODE ANN. § 1304.1581(b)–(c) (West 2012); *see In re Readyone Indus., Inc.*, 394 S.W.3d 689, 693 (Tex. App.—El Paso 2012, orig. proceeding) (explaining the last antecedent rule, in which a qualifying phrase in a statute modifies "the words and phrases immediately preceding it to which it may, without impairing the meaning of the sentence, be applied"). We find no statutory language to suggest that the Legislature intended for this deduction from the refund amount to be discretionary. By including this language, the Legislature has unambiguously specified the amount that a service provider "shall" refund. A contract term providing for a refund amount that deviates from the amount set by the Legislature is thus contrary to the statute. Accordingly, even if the statutory language were ambiguous, we would not defer to the Department's interpretation. *See R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624–25 (Tex. 2011) (stating that an agency's construction of a statute is entitled to serious consideration only if it "does not conflict with the statute's language"); *TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173, 182 (Tex. 2013) (explaining that deference to an agency's interpretation is appropriate only when a statute is ambiguous).

The Department questions the public policy of an interpretation that "require[s] providers to deduct claims paid from refunds to consumers, even if the providers do not want to deduct claims." Dep't Brief at 7. As the Texas Supreme Court has stated, however, the task in statutory construction "is to effectuate the Legislature's expressed intent" and "not to impose our personal policy choices or 'to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results.'" *Ritchie v. Rupe*, 443 S.W.3d 856, 866 (Tex. 2014) (quoting *Iliff v. Iliff*, 339 S.W.3d 74, 79 (Tex. 2011)). Moreover, the Legislature's stipulation that any other terms governing cancellation in a service contract may "not conflict with [section 1304.1581]," TEX. OCC. CODE ANN. § 1304.1581(d) (West 2012), does not mean that a service contract provider could not "offer additional cancellation and refund rights to its service contracts holders, which exceed those provided for in the statute." Dep't Brief at 6. It simply cannot do so in a manner that conflicts with section 1304.1581. Guided by the plain language of the statute, a court would likely conclude that section 1304.1581 does not authorize a service provider to issue a service contract refund that does not deduct the amount of any claims previously paid under the contract.

## S U M M A R Y

A court would likely conclude that section 1304.1581 of the Occupations Code does not authorize a service provider to issue a service contract refund that does not deduct the amount of any claims previously paid under the contract.

Very truly yours,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

BRANTLEY STARR
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

BECKY P. CASARES
Assistant Attorney General, Opinion Committee